IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

In Re: JSS of Albuquerque, LLC

Debtor.                                                             Bankruptcy No. 17-10092-j11

State of New Mexico,

        Appellant,

v.                                                                          1:17-cv-00875-JCH-LF

JSS of Albuquerque, LLC,

        Appellee.

## PROPOSED FINDINGS AND RECOMMEND DISPOSITION

THIS MATTER is before the Court on the parties' briefing regarding whether this bankruptcy appeal is moot. Following a status conference on September 14, 2018, the Court ordered the parties to brief the issue of whether this appeal is moot in light of the settlement of the underlying bankruptcy case. Doc. 15. The parties submitted simultaneous briefs on the issue on October 26, 2018. Docs 16, 17.[1] The Honorable Judith C. Herrera referred this case to me "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 2. Pursuant to that order, having reviewed the parties' submissions and the applicable law, and being otherwise fully advised, I find that the Court can fashion no meaningful relief and that this case is moot. I also find that the State is not entitled to vacatur of the Bankruptcy Court's decision. I therefore recommend that the case be dismissed for lack of jurisdiction,

---

[1] JSS did not take any position or make any argument regarding this appeal or the question of mootness. Doc. 17.

and that the Court take no further action.

## I. Background Facts and Procedural Posture

This case arises from an enforcement action filed in the Second Judicial District Court, Bernalillo County, New Mexico in December 2016. *See* I Record on Appeal ("ROA")[2] at 18−71. The State of New Mexico ("State") alleged that JSS of Albuquerque, LLC and its principals (collectively "JSS") had violated various New Mexico consumer protection laws. *See id*. In that enforcement action, the State sought injunctive relief, statutory penalties, and restitution as authorized by statute. *See id.* JSS responded by filing a petition for relief in the Bankruptcy Court under chapter 11 and taking advantage of the automatic stay imposed by 11 U.S.C. § 362. *See* I ROA at 4−7; *see also State of New Mexico v. JSS of Albuquerque, LLC*, No. D-202-CV-2016-07636 (2d Judicial Dist. Ct. N.M. Jan. 18, 2017) (Notice of Automatic Stay, attached as Exh. 1); I ROA at 114−15 (memorandum opinion and order describing the background). The State took the position that enforcing its consumer protection laws was a police and regulatory matter not subject to the automatic stay. *See* I ROA at 8. Nevertheless, the Second Judicial District Court requested that the State obtain an order from the Bankruptcy Court (sometimes called a "comfort order") to assure the state court that it was not violating the federal law by proceeding. *See id*. The State then sought a determination from the Bankruptcy Court as to whether the state court proceeding was stayed. I ROA at 8–16. On August 1, 2017, Chief Bankruptcy Judge Robert Jacobvitz issued a Memorandum Opinion and Order holding that

---

[2] The Record on Appeal is comprised of two volumes, which are Documents 3 and 4 on the Court's docket sheet. The volumes are consecutively paginated, and all citations are to the page number on the lower right-hand corner of each page of the Record. The Roman numeral refers to the volume in which the cited page appears.

the § 362(b)(4) exception[3] to the automatic stay did not encompass the fixing of the State's statutory restitution remedy, and he granted the State's motion only in part. I ROA at 114–33.

Specifically, Chief Judge Jacobvitz held:

> The State's prosecution of the State Court Action, including the adjudication of its requests for declaratory and injunctive relief and liquidation of civil penalty amounts under the NMUPA, NMMLO and NMREB, constitutes a proper exercise of the State's police and regulatory powers to protect the citizens of the State of New Mexico. Such claims are excepted under § 362(b)(4) from the operation of the automatic stay. The State's requests for restitution, disgorgement, and rescission, however, primarily adjudicate private rights. Consistent with New Mexico case law, such claims fail to satisfy the public policy test under *Eddleman*. Consequently, those claims do not fall within § 362(b)(4)'s exception. The State has not met its burden to show that enforcement of the provision in the Permanent Injunction that requires the JSS to obtain further orders from the State Court to collect wrap around real estate contract payments after February 2017 falls within § 362(b)(4)'s exception. The State may file a motion in this Court requesting relief from the automatic stay to pursue its claims for restitution, disgorgement, and rescission or to seek other relief in in the State Court Action. If the State obtains a money judgment for civil penalties in the State Court Action, the State must return to the Bankruptcy Court; collection of any money judgment for civil penalties is stayed under § 362(a).

I ROA at 132−33. The State timely appealed this decision on August 25, 2017 and elected to have the appeal heard by the District Court rather than by the Bankruptcy Appellate Panel. I ROA at 138−39. The issue presented for appeal was whether the Bankruptcy Court erred "in determining that the police and regulatory power exception to the automatic stay set out in 11 U.S.C. § 362(b)(4) did not apply to the State of New Mexico's efforts to fix the amount of victim restitution, a remedy available to the Attorney General under both the Unfair Trade

---

[3] 11 U.S.C. § 362(b)(4) states that the filing of a petition for bankruptcy under specified sections of Title 11 "does not operate as a stay—"

> under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power.

Practices and Mortgage Loan Origination Acts?" I ROA at 140.

The Court set a briefing schedule, Doc. 6, and the State filed its motion to remand on November 1, 2017, Doc. 7. JSS did not respond to the State's motion. Briefing on the merits of the appeal was complete on December 12, 2017. Doc. 10.

In August of 2018, it came to the Court's attention that the parties in the underlying bankruptcy case had reached a mutually agreeable settlement.[4] *See* Doc. 11. The Court ordered the parties to provide the Court with a joint status report, and the Court set a status conference. *Id*. At the status conference on September 14, 2018, the parties advised the Court that the underlying bankruptcy case had settled and "implementation of the settlement is imminent." The parties agreed that the settlement of the bankruptcy case would result in dismissal with prejudice of the chapter 11 bankruptcy and termination of the automatic stay, as well as resolution of the pending state court case. *See* Doc. 14. Accordingly, the Court ordered briefing on whether the termination of the underlying bankruptcy and state court case rendered this appeal moot. *See* Doc. 15. The parties filed their simultaneous briefing on the issue on October 26, 2018, Docs. 16, 17, and again JSS took no position on either the appeal or the mootness question, *see* Doc. 17. On December 13, 2018, the Bankruptcy Court notified this Court that it had dismissed the underlying bankruptcy case on October 26, 2018. Doc. 18.

---

[4] Disturbingly, the Court did not learn of the settlement from the State. The State represented on August 2, 2018 in the Parties' Stipulation Regarding Material Settlement Terms that it would "advise the U.S. District Court, District of New Mexico in the pending appeal, Case No.17-CV-00875, of this settlement and dismissal of the bankruptcy action." *In re: JSS of Albuquerque, LLC*, No. 17-10092-j11, Doc. 127 at 4 (Bankr. D.N.M. Aug. 2, 2018) (attached as Exh. 2). Despite this representation, the Court did not learn of the settlement until late August 2018. *See* Doc. 11. Furthermore, the Court was informed of the settlement only by chance, by a Bankruptcy Court employee.

## II. Discussion

The State makes two arguments it is brief. First, the State argues that although there is no dispute that the settlement of the underlying cases renders the appeal moot, an exception to the mootness doctrine—that the case is "capable of repetition, yet evading review"—applies. Doc. 16 at 3−5. Second, the State argues that if the Court finds that no exception to the mootness doctrine applies, justice requires that the Court direct the Bankruptcy Court to vacate its opinion and order because otherwise "the New Mexico legal community as a whole will move forward with an erroneous understanding of § 362(b)(4)'s exemption of the exercise of government's police and regulatory powers in bankruptcy cases." Doc. 16 at 7; *see generally id.* at 5−7. Neither of the State's arguments has merit.

### A. Mootness

"The mootness doctrine 'derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *Ghalani v. Sessions*, 859 F.3d 1295 (10th Cir. 2017) (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)). An "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Brown v. Buhman*, 822 F.3d 1151, 1165 (10th Cir. 2016) (*quoting Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id*. (internal quotation and citation omitted); *see also WildEarth Guardians v. Pub. Serv. Co. of Colorado*, 690 F.3d 1174, 1182 (10th Cir. 2012) ("Mootness usually results when a plaintiff has standing at the beginning of a case, but, due to intervening events, loses one of the elements of standing during litigation. . . ."). "A case will be rendered moot if 'the issues

presented are no longer live or the parties lack a legally cognizable interest in the outcome.' " *Wyoming v. United States Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Id*. "Put another way, a case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision." *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015). "Mootness deprives federal courts of jurisdiction." *Brown*, 822 F.3d at 1165.

There are two exceptions to the mootness doctrine that would allow a court to hear a case after the controversy between the parties has been extinguished. The first exception involves issues that are "capable of repetition, yet evading review." *Brown*, 822 F.3d at 1166. This exception to the mootness doctrine applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id*. The exception is narrow and "is only to be used in exceptional situations." *Jordan v. Sosa*, 654 F.3d 1012, 1034–35 (10th Cir. 2011) (internal quotations and citations omitted).

The second exception to the mootness doctrine involves the voluntary cessation of the challenged activity; a party may not evade judicial review by temporarily ceasing to engage in questionable behavior. *New Mexico ex rel. Richardson v. Bureau of Land Management*, 565 F.3d 683, 701–02 (10th Cir. 2009). The State contends only that the "capable of repetition, yet evading review" exception is applicable to this case. *See* Doc. 16 at 3−5. The Court, therefore, will not address the "voluntary cessation" exception.

The "capable of repetition, yet evading review exception" addresses circumstances where "injuries occur and are over so quickly that they always will be moot before the federal

court litigation process is completed." *See* ERWIN CHEMERINSKY, FEDERAL JURISDICTION 137 (6th ed. 2012). "Disputes regarding regulation of abortion, for example, are capable of repetition yet evade review because 'the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied.' " *Brown*, 822 F.3d at 1166 (*quoting Roe v. Wade*, 410 U.S. 113, 125 (1973)). The party asserting that the exception exists—here, the State—bears the burden of establishing both elements of the two-prong test. *Jordan*, 654 F.3d at 1035. The State cannot carry its burden with regard to either element.

There is no question that the settlement of both the underlying state case and the bankruptcy case has rendered this case moot. The State appealed the partial stay imposed by the Bankruptcy Court on its enforcement action in the state court. *See* I ROA at 138−40. The dismissal of the bankruptcy case lifted the stay, and the state case is proceeding toward a final judgment which provides for JSS's payment of civil penalties and restitution. *See* Doc. 18; *see also In re: JSS of Albuquerque, LLC*, No. 17-10092-j11, Docs. 127, 128 (Bankr. D.N.M. Aug. 2−3, 2018) (attached as Exhs. 2 & 3); *State of New Mexico v. JSS of Albuquerque, LLC*, No. D-202-CV-2016-07636 (2d Judicial Dist. Ct. N.M. Oct. 29, 2018) (Joint Motion for Entry of Judgment, Permanent Injunction and Monetary Sanctions, attached as Exh. 4). Thus, this Court cannot provide any relief to the State by deciding the appeal. Instead, the State argues that the "capable of repetition, yet evading review" exception applies.

With respect to whether the exception applies, the State makes a number of arguments, none of which addresses the issue of whether an automatic partial stay of a State enforcement action is by its nature too short to be fully litigated before the stay's cessation or expiration.

7

The State asserts—without citation to any authority—that it has a dozen consumer protection actions seeking statutory restitution and many more under way. Doc. 16 at 3−4. It argues that the Bankruptcy Court's decision in this case gives "dishonest debtors the incentive and ability to seek shelter under the protection of title 11, and thereby hinder and delay enforcement of the law." *Id.* The State further contends that "[t]he regulator will be faced with the choice of bifurcating its non-bankruptcy proceeding between determination of penalties and determination of what amount of profit was wrongfully obtained . . . or going to bankruptcy court for permission to fully enforce the law, with all the concomitant procedural and financial complexities." *Id*. "Moreover," argues the State, "one can imagine request for stays pending appeal of any bankruptcy court determination that the stay should be modified to permit law enforcement actions to proceed." *Id*.

None of these arguments, however, provide any information as to how any future partial stays are necessarily of such short duration that they will be moot before the appellate process is completed. There is no indication that the State's cases seeking statutory penalties and restitution have a specific timeline that is too short to be fully litigated prior to cessation or expiration. Unlike the human gestation period, there is nothing inherent about the State's enforcement of its consumer protection laws that would prevent appellate review of a partial stay of a State enforcement action in future litigation. Under the circumstances of this case, the parties settled their dispute before the Court decided this appeal. But there is nothing inherent about the process that would make that true in every case in which the State appeals a stay order issued by the Bankruptcy Court.

With regard to the second prong of the "capable of repetition, yet evading review" exception, none of the State's arguments demonstrate that there is a reasonable expectation that

the State would be subject to the same action again. While the State may have several of these types of cases, the State has not established that defendants in these cases routinely seek bankruptcy protection and a partial stay of the State's enforcement action. Indeed, the State itself acknowledged that although Chief Bankruptcy Judge Jacobvitz imposed a partial stay in this case, JSS's principal, Jesus Cano, did not contest the State's request for a "comfort order" in Cano's companion bankruptcy proceedings, and Bankruptcy Judge David Thuma entered the State's requested order and did not impose a stay. Doc. 16 at 2. If anything, this shows that the State is *unlikely* to be subject to the same action again.

In short, the State provides no basis for this Court to conclude that there is a reasonable expectation that the State's future enforcement actions seeking monetary penalties and restitution will be brought before the Bankruptcy Court, and that the Bankruptcy Court will impose partial stays in those cases over the State's objection.[5] Even if some future cases are

---

[5] The State suggests that Chief Judge Jacobvitz's opinion in this case will preclude it from arguing in future cases that the automatic stay does not apply, citing to *In re Fairchild Aircraft Corp.*, 220 B.R. 909, 914 (Bankr. W.D. Tex 1998). *See* Doc. 16 at 4−5. This suggestion is meritless. First, even the court in *In re Fairchild Aircraft Corp.* recognized that trial court decisions bind no other court, and that bankruptcy court decisions only have persuasive authority over other bankruptcy judges. *See* 220 B.R. at 917 n.10; *see also In re Illig Industries, Inc.*, 2004 WL 2044113, *3 (Bankr. D. Kan. 2004) ("while courts disagree about the binding effect a decision by one of a number of district judges in a district has on bankruptcy judges in that district,[] the Court is aware of no authority suggesting that a decision by one bankruptcy judge is binding on other bankruptcy judges in the same district"). Second, it is questionable whether a decision by this Court would be binding on the bankruptcy court in future cases. *See In re Hillsborough Holdings Corp.*, 127 F.3d 1398,1402 n.3 (11th Cir. 1997) ("We have been presented with no Supreme Court or court of appeals precedent on whether decisions by a district court will constitute binding precedent for the bankruptcy courts in the same district, and the few district courts to consider the issue are split." *Compare In re KAR Dev. Assocs., L.P.*, 180 B.R. 629, 640 (D. Kan. 1995) (holding that bankruptcy courts are not bound by district court precedent, even from their own district); *with Bryant v. Smith*, 165 B.R. 176, 180-81 (W.D. Va. 1994) (holding that bankruptcy courts are bound by district court precedent from their own district)). Although it is likely that Judge Jacobvitz himself would be inclined to follow his prior opinions, the State has not cited to any legal authority that indicates that it could not argue in any future case that Judge Jacobvitz's opinion in this case was wrong, and subsequently appeal any decision following that opinion.

9

brought before the Bankruptcy Court, there is no reason to expect that they will settle before the district court has the opportunity to decide an appeal of a partial stay order. Because the State has not established that the "capable of repetition, yet evading review" exception applies under these circumstances, and because the State does not argue that any other exception applies, this case is moot. This Court does not have jurisdiction to act in this matter.

B. <u>Vacatur</u>

Citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18 (1994), the State contends that justice requires that this Court direct the Bankruptcy Court to vacate Chief Judge Jacobvits' opinion and order so that its precedential value will not be applied in future litigation here and across the country.[6] Doc. 16 at 5–7. This case, however, is virtually indistinguishable from *U.S. Bancorp*, and the decision there controls the outcome of this case. In that case, the Supreme Court held "that mootness by reason of settlement does not justify vacatur of a judgment under review," and the Court refused to vacate the Ninth Circuit's decision holding that an automatic stay under 11 U.S.C. § 362(a) applied. *U.S. Bancorp*, 513 U.S. at 29. Similarly, because the State voluntarily settled this case, it is not entitled to vacatur of Judge Jacobvitz's opinion ordering a partial stay of the State's enforcement action.

As the Supreme Court explained in *U.S. Bancorp*, 28 U.S.C. § 2106 permits a reviewing court to "affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." *U.S. Bancorp*, 513 U.S. at 21. Thus, even when an appellate

---

[6] As already noted in the preceding footnote, Judge Jacobvitz's opinion is not binding precedent. It is only persuasive authority that may or may not convince other bankruptcy judges to follow suit.

10

court determines that a case before it is moot, it may continue "to take any action with regard to a piece of litigation once it has been determined that the requirements of Article III no longer are (or indeed never were) met." *Id*. For example, an appellate court may determine that a district court lacked jurisdiction in the first instance, vacate the decision of the district court, and remand with direction to dismiss. *Id*.

Indeed, under prior Supreme Court precedent, "[t]he established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." *Id.* at 22 (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950)). The Supreme Court explained that vacatur "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *Id*. at 22−23 (quoting *Munsingwear*, 340 U.S at 40).

In *U.S. Bancorp*, however, the Supreme Court determined that *Munsingwear* did not apply in **all** circumstances where a controversy had become moot. *Id.* at 23−24. The Supreme Court limited *Munsingwear* to those circumstances where the controversy became moot due to circumstances unattributable to any of the parties. *Id.* at 24−29. The Supreme Court held that

> [w]here mootness results from settlement, . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice. The denial of vacatur is merely one application of the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.

*Id*. at 25 (internal quotations, citations and brackets omitted).

In this case, the mootness results from the State's voluntary participation in a settlement. Accordingly, the State has voluntarily forfeited its legal remedy and surrendered its claim to vacatur. In these circumstances, the Court should not vacate the bankruptcy judge's decision.

11

In *U.S. Bancorp*, the Supreme Court left open the possibility that "exceptional circumstances may conceivably counsel in favor of" vacatur even when a case has become moot because of a settlement. 513 U.S. at 29. Perhaps in an attempt to show such exceptional circumstances in this case, the State tries to downplay its role in the settlement of the underlying bankruptcy and state court case. Without citation to anything in the record, the State asserts that "JSS's failure to prosecute its chapter 11 led to the United States Trustee seeking dismissal of the bankruptcy. The State opposed dismissal; JSS wanted dismissal." Doc. 16 at 5. It further says that in preparing for an evidentiary hearing on dismissal, "JSS and the State settled the State Court action," and agreed to dismiss the bankruptcy. *Id*. "Each cascaded from the United States Trustee's Motion [to dismiss]." *Id*. The fact remains, however, that this case did not become moot due to circumstances unattributable to any of the parties. The State voluntarily settled both the state court case and the underlying bankruptcy with JSS.

> It is petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur. Petitioner's voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive, whatever respondent's share in the mooting of the case might have been.

*U.S. Bancorp*, 513 U.S. at 26. The State has not established that it is entitled to the extraordinary remedy of vacatur.

### III.     Recommendation

For the foregoing reasons, I find that this appeal is moot, and no exception to the mootness doctrine applies. The Court therefore does not have jurisdiction to decide the merits of this appeal. I further find that the State has not established that it is entitled to the equitable remedy of vacatur. I therefore recommend that the State's appeal be dismissed, and that the Court take no further action.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
Laura Fashing
United States Magistrate Judge